IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| BARBARA DAWN UNDERWOOD, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 120-136 |
| | * | |
| APPLE INC., JOSEPH ERIC | * | |
| LARSEN, ERIC WILLIAMS, SEAN | * | |
| KEENAN, TIANNA GOUVEIA, and | * | |
| STEPHEN DUANE BROWN, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**O R D E R**

Before the Court are four motions to dismiss, each by a different defendant or group of defendants: (1) Apple, Inc.[1] (Doc. 8); (2) Joseph Eric Larsen, Tianna Gouveia, and Stephen Duane Brown (together, the "Individual Defendants") (Doc. 9); (3) Defendant Eric Williams (Doc. 23); and (4) Defendant Sean Keenan (Doc. 27). For the reasons that follow, Defendants' motions are **GRANTED**.

---

[1] Plaintiff names "Apple Computers, Inc." and "Apple Store Augusta" as Defendants. (Doc. 1.) Defendant "Apple Computers, Inc." clarifies that its correct name is "Apple Inc." and that no legal entity by the name of "Apple Store Augusta" exists; rather, Apple Inc. was Plaintiff's employer for the purposes of this lawsuit. (Doc. 8, at 1.) Accordingly, the Court will refer to both of these named Defendants together as "Apple Inc."

## I. BACKGROUND

Plaintiff, proceeding *pro se*, filed the present action asserting numerous discrimination claims against her former employer, co-workers, and corporate representatives – the above-named Defendants. (Doc. 1.) Specifically, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as well as claims for intentional infliction of emotional distress ("IIED") under Georgia law. (Id.) Defendants seek to dismiss the Complaint as described below. (Docs. 8, 9, 23, 27.)

Plaintiff worked as a sales associate for Apple Inc. ("Apple") from December 6, 2010 until September 4, 2019.[2] (Doc. 1, at 9-11.) During that time, Plaintiff twice reported a co-worker, Defendant Stephen Duane Brown ("Brown"), for sexual harassment and sexual assault, as well as verbal, emotional, and physical abuse. (Id. at 9.) In spite of these reports, Plaintiff's senior manager, Defendant Tianna Gouveia ("Gouveia"), "failed to inform [her] how

---

[2] In deciding this motion to dismiss, the Court accepts all facts alleged in the complaint as true and construes all reasonable inferences in the light most favorable to Plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

2

[she] should report [these incidents] directly to Apple Human Resources [("HR")]." (Id.)

Plaintiff finally reported the incidents in February 2019, at which time several things happened. First, Defendant Eric Williams ("Williams"), an Apple HR employee, denied Plaintiff's request to work from home – an accommodation subsequently granted to Plaintiff's co-workers due to the COVID-19 pandemic. (Id.) Second, Plaintiff took a leave of absence from Apple, whereupon Defendant Williams and Defendant Sean Keenan ("Keenan") (another Apple HR employee) told her that to avoid working with Defendant Brown upon her return, she would have to submit "the proper documentation for [ADA] accommodations." (Id.) Plaintiff submitted "[ADA] accommodations from [her] psychiatrist and therapist," which Defendants Apple, Williams, and Keenan declined to accept, in alleged violation of the ADA. (Id.)

On June 18, 2019, after some communication with Defendants Williams and Keenan, Defendant Keenan emailed Plaintiff stating Defendant Williams "had found no evidence to substantiate [Plaintiff's] claims," although Defendant Keenan "admitted that they had only investigated a few of the claims, but not all of them." (Id. at 10.) Defendant Keenan gave Plaintiff a deadline of June 24, 2019 to return to work, stating, "If you do not contact your Store Leader as instructed by June 24, 2019, your failure to do so may be considered an Unauthorized Leave which could result

3

in termination of employment." (Id. at 11.) Plaintiff responded on June 24, 2019 noting her concerns over returning to work with Defendant Brown. Plaintiff alleges that by "[t]olerating [Defendant Brown's] conduct[, Defendant] created an intimidating, hostile, and offensive working environment . . . causing intentional infliction of emotional distress . . . [and violating] Title VII." (Id.)

Plaintiff received two other communications from Defendant Apple, both sent by Defendant Joseph Eric Larsen ("Larsen"). First, a letter "admitting that [Defendant] Keenan had not even started investigation [of] the additional harassment claims and giving [Plaintiff] a deadline to respond to him . . . by July 12, 2019." (Id.) Second, a termination letter Plaintiff received on September 4, 2019 based on job abandonment, stating Plaintiff "needed to respond by September 3, 2019, (the previous day), making it impossible to resume [her] employment." (Id.) She alleges Defendant Larsen's actions were personal and retaliatory in violation of Title VII. (Id.) Plaintiff further alleges she was discriminated against because of her age (53), was forced to work with a customer who touched her inappropriately, and was harassed in violation of Apple's harassment policy – all of which she claims also violate Title VII. (Id. at 12.)

Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on June 29,

4

2020 outlining these claims. (Id. at 13.) That same day, the EEOC dismissed her claim for failure to timely file the Charge and issued Plaintiff a notice of her right to sue. (Id. at 16.) Plaintiff filed this lawsuit on September 29, 2020. (Doc. 1.) Defendants moved to dismiss on March 8, 2021, (Docs. 8, 9), March 29, 2021 (Doc. 23), and April 6, 2021 (Doc. 27). Defendants assert Plaintiff's suit is barred because she failed to exhaust her administrative remedies, failed to timely file this lawsuit, failed to state a claim upon which relief can be granted, because there is no individual liability under Title VII, the ADA, or the ADEA, and for lack of personal jurisdiction. (Doc. 8, at 2; Doc. 9, at 1-2; Doc. 23; Doc. 27, at 1-3.) The Court will address these arguments below.

**II. LEGAL STANDARD**

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not

5

required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty.

---

[3] The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

"It is well-established that 'a document filed *pro se* is to be liberally construed.'" Sholes v. Anesthesia Dep't, No. 1:19-cv-022, 2020 WL 1492175, at *6 (S.D. Ga. Mar. 23, 2020) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "Nevertheless, 'a *pro se* pleading must still suggest that there is at least some factual support for a claim.'" Id. (quoting Waldman v. Ala. Prison Comm'r, 871 F.3d 1283, 1289 (11th Cir. 2017)).

## III. DISCUSSION

### A. Title VII, ADEA, and ADA Claims

As an initial matter, it is well-established that there is no individual liability under Title VII, the ADEA, or the ADA. Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1342 (N.D. Ga. 2009). Thus, Plaintiff's statutory claims against the Individual Defendants are **DISMISSED**.

Next, Title VII, the ADEA, and the ADA each bar claims not filed within 180 days after the alleged unlawful employment practice took place. "Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies." Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (citation omitted). "The first step down this path is filing a timely charge of discrimination with

7

the EEOC." Id. (citations omitted). "For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act." Id. (citing 42 U.S.C. § 2000e-5(e)(1)). This filing requirement applies with equal force to the ADA and the ADEA. See Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999) ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII . . . ."); Weeden v. Minn. Min. and Mfg. Co., 781 F. Supp. 1576, 1583 (N.D. Ga. 1991) ("[A]llegations of discriminatory conduct [in the ADEA context] occurring outside the 180 day filing period may not properly be considered by this Court."); see also 42 U.S.C. § 12117(a).

Here, Plaintiff does not dispute her charge was untimely filed. (Doc. 16, at 5.) Plaintiff alleges she suffered her last adverse employment action, termination, on September 4, 2019. (Doc. 1, at 11.) Thus, she had until Monday, March 2nd, 2020 – 180 days – to file her charge with the EEOC. Plaintiff admits she did not file her charge until June 29, 2020 – 299 days after her the last adverse employment action.

Plaintiff counterargues she "did everything in [her] power to handle [the dispute] internally through Apple." (Doc. 16, at 5.) While she admits she did not file a claim with the EEOC until over 180 days had passed, she argues that she "only [found] out that the EEOC could provide [her] with the opportunity to present [her]

case" after it was too late. (Id.)  In essence, Plaintiff asks the Court to apply equitable tolling to her 180-day deadline. However, neither Plaintiff's status as a *pro se* litigant nor her ignorance of the EEOC deadline creates a basis for equitable tolling.  "Tolling is appropriate when the plaintiff establishes [her] filing is untimely due to 'extraordinary circumstances that are both beyond [her] control and unavoidable even with diligence.'" Ahmed v. Bd. of Regents of Univ. Sys. of Ga., 339 F. App'x 937, 938 (11th Cir. 2009) (citation omitted).  "Neither [Plaintiff's] status as a *pro se* litigant nor [her] alleged ignorance about the administrative process constitute the type of extraordinary circumstances that warrant tolling." Id. at 938-39.  Because Plaintiff failed to file her charge with the EEOC within 180 days of her last alleged adverse employment action, her claims are **DISMISSED**.[4]

## B. Intentional Infliction of Emotional Distress

Alongside her claims for federal statutory violations, Plaintiff asserts a claim for IIED under Georgia common law.

As an initial matter, the Court may only consider IIED claims that are not time-barred.  O.C.G.A. § 9-3-33 imposes a two-year statute of limitations on claims for intentional infliction of

---

[4] Because Plaintiff's statutory claims are time-barred, the Court need not, and does not, consider the remainder of Defendant's arguments related to these claims.

emotional distress. ("[A]ctions for injuries to the person shall be brought within two years after the right of action accrues.") See <u>Clifton v. Jeff Davis Cnty.</u>, No. 2:16-cv-108, 2019 WL 2385191, at *10 (S.D. Ga. June 5, 2019) ("A claim for [IIED] is subject to a two-year statute of limitations, governed by O.C.G.A. § 9-3-33.") Plaintiff filed suit on September 29, 2020. (Doc. 1.) Accordingly, the Court may only consider IIED claims that accrued on or after September 29, 2018.

Plaintiff alleges her supervisor received "the latter report" – the report outlining the second of two incidents of sexual harassment and sexual assault – on September 10, 2018. (Doc. 1, at 9.) This means that Plaintiff's allegations of repeated sexual harassment, sexual assault, verbal abuse, emotional abuse, physical abuse, and age harassment, all occurred, at the latest, on September 10, 2018. Thus, any claims related to those actions are barred by the statute of limitations.

Plaintiff's surviving claims for IIED encompass several factual allegations. These include Defendant Williams' refusal to allow Plaintiff to work from home; Defendants Williams and Keenan's refusal to accept her "ADA accommodations"; Plaintiff's subsequent "re-traumatizations" while speaking with several Defendants on the phone; Mr. Keenan's failure to investigate all of Plaintiff's claims; Defendants' refusal to accommodate Plaintiff's request to

work different shifts than Defendant Brown; and finally, Plaintiff's firing. (Doc. 1, at 9-11.)

In Georgia, claims for IIED must contain at least four elements: "(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe." Cottrell v. Smith, 788 S.E.2d 772, 780 (Ga. 2016) (citation omitted). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for [IIED] is a question of law." Fisher v. Toombs Cnty. Nursing Home, 479 S.E.2d 180, 185 (Ga. Ct. App. 1996) (citation omitted). In Georgia, plaintiffs must overcome a high threshold in order to establish that conduct was sufficiently outrageous to support an IIED claim. "Liability for [IIED] has been found in Georgia only when a defendant's conduct . . . is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Turnbull v. Northside Hosp., Inc., 470 S.E.2d 464, 466 (Ga. Ct. App. 1996) (internal citations and quotations omitted).

While Defendants may have acted improperly by failing to address some of Plaintiff's concerns, none of Plaintiff's allegations constitute the type "extreme or outrageous" behavior

that gives rise to a claim for IIED. Accordingly, Plaintiff's claim for IIED is **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motions to dismiss (Docs. 8, 9, 23, 27) are **GRANTED** and this matter is **DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of January, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA